Good morning. Morning, Your Honor. May it please the court. For identical criminal conduct, Left Hand received a sentence of ten years in prison. Crow Eagle, three years in prison. Now Left Hand received an additional ten years for the burning in this case. However, that seven-year disparity for identical criminal conduct, the exact same conduct establishes the district court did not consider the need to avoid an unwarranted sentencing disparity and created a substantively unreasonable sentence. We ask this court reverse or amend the district court's judgment for resentencing to fix this problem. Now, Your Honor, when the court failed to consider the need to avoid an unwarranted sentencing disparity, the court failed to do that between two similarly situated parties. The court also failed to apply that disparity factor to its judgment, thus constituting procedural error. Now, the strongest piece of evidence that the court failed to consider the disparity factor is the judgment itself. Ten years versus three years. Can you really parse those out like that? You know, you're sort of saying, well, the ten years goes to the one act of the burning and then the other. Is there any cases that do that in this context in, you know, comparing disparities? You understand what I'm saying? Yes, Your Honor. I can't think of any cases that specifically parse it out like that. However, I think the district court's structure of the sentence actually is why, really illustrates why that's relevant, Your Honor. The court didn't decide to apply all of the conduct or all of the penalty to count three at the burning count. The court very specifically apportioned out for left hand, five years for the neglect for failing to take the child at the hospital, five years for the neglect for failing to nourish the child, and five in concurrent five years for leaving the children home alone unsupervised. Whereas for Crow Eagle, the court apportioned out three years on all of those same counts concurrent. So there's no case law in it, Your Honor, but that's how the court structured its sentence. That's why I think the judgment is the strongest piece of evidence the court didn't actually consider the disparity factor. Don't you also, though, have some difference in that, wasn't it Crow Eagle actually went and eventually got the child some care? Well, Your Honor, Crow Eagle didn't actually get the child some care. He went to the hospital to get burn ointment the day that the police were called. However, that was three or four days after the child had been sitting at home burned. Additionally, left hand actually was applying petroleum jelly and medication to the child in the meantime to try to help the burns and mitigate the pain. So I don't think that distinguishes the parties. Now, Your Honor, I think you're getting at the idea that you think you're questioning whether the parties are similarly situated. And yes, although there are some differences, really at the end of the day there's one difference. Left hand burned the child. However, when you're looking at the disparity factor, the plain language of the statute focuses the court on similarly situated parties who have similar records, who have been convicted of similar conduct. In this case, we have two parents who engage in a pattern of neglect and abuse against the same victims, their own children, under the same house, during the same period of time, the two months, a little less than two months they had custody of these children. The burning doesn't mean that they're not similarly situated. It just means that at a certain point, Your Honor, there was going to be a disparate sentence. It was going to be a warranted disparity, a disparity that would account for the burning. However, 17-year difference, specifically a seven-year difference on identical criminal conduct is not a warranted sentencing disparity. At what point is the court required just to look at left-hand sentence to determine whether that in and of itself is a reasonable sentence before the comparison kicks in? Where does that fall into this analysis? Well, Your Honor, yes. The court has to, and the substantively, whether the sentence is substantively reasonable, the court has to analyze whether the 20-year sentence was appropriate. However, Your Honor, I think when you're looking at that element of the sentence, you also have to consider whether, if the court weighed out the 3553A factors for Crow Eagle and determined, except for the disparity factor, and determined that three years was appropriate, how, for identical criminal conduct, could the court weigh the 3553A factors and determine left-hand deserved 10 years for that identical criminal conduct? Does the timing of their two sentencings affect this analysis? Because the parties have pointed out the district court did not have Mr. Crow Eagle in front of him until significantly later. I don't even, did he have the pre-sentence report for Mr. Crow Eagle at the time he sentenced Ms. Upton? He did not have the pre-sentence report for Crow Eagle, but however, the answer to your question is no. In Lazenby, there was a one-month difference between the two sentencings. The court still found it was appropriate to reverse and remand. Looking at this case, the court had conducted both change of pleas, extensively questioning both defendants. The court had the guideline arranged for both defendants. It had the statutory maximums, and in left-hands, before Crow Eagles. It contains all of the same factual information as to the conduct for both parties. Additionally, when you look at the government sentencing memorandum for both parties, it's nearly identical in content and in exhibits. The only exhibit on the government sentencing memo for Crow Eagle that was not included, that was not included in left-hand sentencing memo, was her own proffer, which I had included in my sentencing memo for the district court. Your Honor, I see that I'm gone. Can I reserve my remaining time for rebuttal? Very well. Thank you, Mr. Costello. Mr. Meyer, the court appreciates your willingness to accept the CJA appointment. Thank you, Your Honor. May it please the court, my name is Mark Meyer. I represent Calvin Crow Eagle in this appeal by both defendants. There's three issues that I wish to address. Most of my focus this morning will be on the motion to dismiss. There is also an appeal we filed arguing that there was an improper upward departure and that the restitution was excessive and there was no proof my restitution order. Let's talk about your motion to dismiss just for a second. My understanding from the motion is that the government and you and your client have reached some sort of an agreement to change the restitution amount. Is that right? That's correct, Your Honor. How can you effectuate that? That's my concern. If the appeal is dismissed, how can that be effectuated? What's the procedural mechanism? How would the court, the district court, have jurisdiction to do that? Well, once this court no longer has jurisdiction, then it's back in the district court and this was brought up . . . Not unless there's a remand of some sort. Well, I think the parties can go back to the district court at any time for any reason. No? Well, I shouldn't say for any reason, but they can go back if they want something remedied. Don't you need a procedural mechanism to do that? I don't think you need a remand to do that. I think motions can be brought to the district court years later. I mean, I've seen it happen where . . . Well, the only possibility I'm aware of is Rule 35, which allows the correcting of a clear error within 14 days after sentencing for arithmetical, technical, or other clear error, or reducing for substantial assistance under Rule 35. I'm not aware of any other mechanism that would give a court jurisdiction. That's my concern. The only response I have to that is that the district court would have inherent power to do that. I'd like a case that says that. I don't have a case that says that. We brought this up to Judge Hovland and he said if the parties brought that motion before him, he would grant the motion. Is it your view that that's fundamentally different because it's the restitution order as opposed to the term of imprisonment? Could you go back and modify the term of imprisonment? Well, I suppose that it's . . . the severity level is different. I mean, imprisonment and a sentence are one thing, but a term of restitution is almost a collateral issue we could argue, I suppose. That would be my argument to the district court is we would just make the motion and the judge would go ahead and do that. I've seen district judges do that in state court all the time, and I think what the judge says, well, if you both want it, I'll do it, and nobody's going to appeal anyway, and I think this is fine, so I'm going to go ahead with it. I'll go back to . . . I'll just state this, is that if this court dismisses the appeal, then what the district court does is what the district court does, and so I guess we're okay with that. So I just . . . Maybe I'm being a purist, but it seems to me there's a jurisdictional question there that . . . I guess if nobody challenges it, maybe it never comes back, but I don't know. There's something that doesn't sit well with me that . . . I can understand where you're coming from on that, and it's just kind of maybe an old-fashioned way of doing what everybody thinks is the right thing to do. I don't know, and I think if you read the transcript, and I don't have the transcript, but I think Judge Hovland even says, well, this guy's not going to pay restitution anyway, and I think probably what he's thinking, and I'm not a . . . One less case that I might get reversed on versus something we're not going to collect anyway, so I'm just going to be practical here, and if nobody complains or appeals, then we're all done. So I've found Judge Hovland to be very practical, and as I said, I've seen state district judges do this numerous times. That doesn't mean technically it complies with the rules, but it seems like perhaps these judges are okay with stretching that a little bit, and I'm going to sit down now because my time is up, and I want to save some time for rebuttal. Thank you. Thank you, Mr. Meyer. Good morning. May it please the Court, my name is Megan Healy, and I represent the United States on appeal in these matters. The United States respectfully asks this Court to affirm the judgment of the district court in both appeals. As to Ms. Lefthand's appeal, the United States covered the issues at length in our brief, and I don't intend to repeat those arguments today other than to note that there was no significant procedural error, much less one that arose to the love of plain error, and Judge Hovland's thorough and thoughtfully explained sentence fell within the heart of reasonableness. Does the government have a position on the motion to dismiss? I do not. Mr. Meyer approached the trial prosecutor in this case with a proposal to resolve the appeal and the restitution question. They worked out a deal. They brought it to Judge Hovland, and he agreed that if the parties filed a stipulation for an amended judgment, he would enter that judgment after the parties fronted that to him. I asked that the district court's clerk's office submit the transcript of that status conference to this Court, and I received notification a couple days ago that you do now have it. It's in the docket, but access is restricted as a number of the documents in this case were sealed. With respect to the motion to dismiss, we concur in Mr. Meyer's request for that motion based on the agreement that he reached with the trial prosecutor to resolve the outstanding issue in this case. Okay, so can you give me a procedural mechanism by which that can be affected? I do not have a case on that. How about a rule? I've heard this agreed to with Judge Hovland, and Judge Hovland indicated in this transcript, and you will see, is that with respect to amending a judgment for restitution, that the parties could come to an agreement via stipulation, and he would enter an amended judgment on the restitution amount. That is the procedure that was contemplated by the district court and agreed to. Is there any rule or case that would allow that, that would have jurisdiction? I've not seen a case in this particular posture, Judge, and I agree that Rule 35 does not cover this situation. Assume we're not willing to go along with that, will the government concede that Crow Eagle's restitution was not subject to the Mandatory Victim Restitution Act? The United States is not defending the judgment on that basis. So you'll concede that? Yes, Your Honor. Okay, so if we decided not to grant the motion to dismiss, you would agree that we should remand on that issue? Well, I've laid out a number of procedural hurdles to get through before you get to the merits of restitution, but this court has a case, the Doring case, which is on the merits. The citation to that is 759 F3rd 862, it's from this court in 2014, Judge Colleton wrote the opinion. And it's a similar posture. The defendant was convicted of a tampering offense and restitution was ordered under the Mandatory Victim Restitution Act. This court remanded for consideration under the Victim Witness Protection Act, 3663. In this case, we asked for remand because the basis of the restitution order isn't clear from the record. Judge Hovland didn't articulate under what statute at the hearing or in the judgment, but I think it's similar. More clear, will you concede that we should remand on that issue? If you get to the merits, yes. Is there some reason why we shouldn't get to the merits? Other than the motion to dismiss. There's a number of procedural arguments that I've laid out in our brief. But if you get through those arguments on the merits, yes, although I would note that we- Yes, will you either concede or abandon those procedural arguments? If not, tell me what they are. The procedural arguments we've laid out were an invited error argument, that they waived a challenge by agreeing to pay restitution, which this court's opinion in Lester from 2000 covers. And we also raised an appeal waiver argument. But setting those aside, getting to the merits, remand would be appropriate. Thank you. I would note in our brief with respect to challenge to the amount of restitution that under plain error, it was not preserved, nor joined in several. But as to the basis for restitution, a remand would be appropriate, which is what I asked for in my brief. Thank you. With respect to Ms. Left Hand's comments that we're dealing with identical criminal conduct that warranted an identical sentence. I've covered this at some length in our brief, but I would like to point out that Mr. Crow Eagle's three years concurrent versus her two sentences of five years consecutive are well supported by the distinctions in their culpability in the record. Do you agree that the conduct we're looking at for the sentences that you've just described is the conduct that occurred after the initial burning of the child? With respect to two of the counts, yes. Count five, I don't recall the date of that account, but it was not related to the burning of the child. It was both defendants left the children locked at home, and I don't recall if that was within the five day period or not. So setting that aside. Fair enough. So conduct separate from the act of burning that Ms. Left Hand is solely responsible for. So with respect to count one, which is failure to seek medical attention, they received, Mr. Crow Eagle received a three year sentence, Ms. Left Hand received a five year sentence. There are marked differences in their culpability with respect to that failure to seek medical attention that are reflected in the record. For example, Ms. Left Hand, during this five day period, she was the primary caregiver. 24-7, she had these children. She knew the severity and the extent of these injuries immediately. These were- What did the record show as to Mr. Crow Eagle's knowledge? It sounded as if while it was denied initially that, I thought the government had proven up that he knew as soon as he got back from work. We, I wouldn't say proven. There's some indication in the record that Ms. Left Hand in her proffer stated that when he came home from work that Wednesday morning, that she told him what had happened, but she hid the extent of the injuries. Did the district court make a finding on the timing of Mr. Crow Eagle's knowledge? No, I would not say they made a finding. He and Mr. Crow Eagle got into a discussion, and Mr. Crow Eagle eventually, I think it would, spirited discussion would be accurate based on the back and forth that I see from the transcript and what the trial prosecutor has told me. Mr. Left Hand made some concession that he knew earlier than he had said, but aside from that single concession, Mr. Crow Eagle, aside from that concession and his change of plea hearing, he has been clear that he didn't find out until much later. That's been his consistent position with the exception of a concession during his change of plea hearing during a back and forth with Judge Hovland. So you've described the difference between a five and a three based on the failure to get the medical attention. What about the additional five that Ms. Left Hand got, and then he got a concurrent three? I have a couple more things to add on count one for the court's consideration. She also knew that the child was barely eating and consistently made conscious decisions not to seek medical attention. By comparison, Mr. Crow Eagle is working a number of overnight shifts during these five days, and he was sleeping during the day while he was home. And the record shows a limited interaction with his son during this period. So primary caregiver versus really limited interaction. The parent who is there to see this day in and day out, 24-7, to the parent who is not. Those warrant the difference of five versus three years on that count. Now, with respect to Ms. Left Hand's counts two, five, and six. Count two relates to malnourishment during this period. And for many of the same reasons, there's a difference in their culpability with respect to the child's malnourishment. In that, Ms. Left Hand in her proffer, which was filed in the district court as part of the record, admitted that she knew the child was barely eating, she knew he was not drinking, she saw the deterioration day by day. I laid out all those facts in our brief, and it's also docket 72-1 in the district court's docket. There's a distinction in the culpability between the two with respect to malnourishment. As I said with respect to count five, the actions are the same. And I don't recall whether the count five related to anything during that five day period. Separately, in addition to the difference in culpability on count two, we have count six that's wrapped up in the second five year consecutive sentence. Crow Eagle's not charged in count six. This is a count that relates only to Ms. Left Hand for locking the children in the house. There's some indication in the record that it was to go and buy drugs. But I recall seeing something about whether it was to go to the grocery store. I don't recall specifically, but it was another admission. And that happened July 7th, I believe, a few days before the child was burned in this case. So with respect to the difference in culpability for malnourishment on count two, and the fact that Crow Eagle was not charged in this other count, there is a principle basis in the record for treating the two differently, as Judge Hovland chose to do here. Do you, what other factors in the record warranted this disparity? We've talked about the facts and circumstances of the offense and the comparative culpability. What about the characteristics of the individual defendants? Other 3558-3A factors that might have weighed in that the district court actually articulated at sentencing? If you step back and look at this from the 50,000 foot level, there is a fundamental difference in the charges faced by these defendants. Ms. Left Hand initially faced two charges with 25 year mandatory minimums, life maximums. Mr. Crow Eagle only ever faced a five year statutory maximum. That alone shows there's just, they're not similarly situated defendants. He had multiple counts though, right? He did, the three counts. So three counts of five. Yes, they're all child neglect under North Dakota law, all carried a five year statutory maximum, no mandatory minimum. Then you step down, besides that, she actually poured boiling water on this child or held him in boiling water in the bathtub, the conduct itself. Judge Hovland was asked to explain the difference in these sentences. He said, quote, Ms. Left Hand caused, quote, all of this chaos, end quote. And most of the child's injuries. Yeah, and we just don't have a lot of time. And I appreciate your argument, and I understand that from the briefs, and that the facts and circumstances of the offense and the charges themselves. And I understand that the district court made clear, or you've explained how you think that was clear. What about other factors? For example, the factors that were specific to the individual defendants and what they brought to the table. Were there other factors that you think that the district court relied on to explain why these disparate sentences were warranted? Yes, Judge. There is, in the record, Mr. Coagle's sentencing, he had four character witnesses come from different parts of his life. I think his father and other relatives. There were letters of support submitted on behalf of him. He presented all of this mitigating evidence to show that this was, to argue that this was an aberration in his behavior. Ms. Left Hand had none of that. There was no letters of support, no character witnesses. The record of sentencing shows that Mr. Cosello reached out and tried to find people to stand up for her, but no one was willing to do that. So there was a fair portion of the sentencing hearing was related to hearing this mitigating evidence with respect to Mr. Crow Eagle. I think also the letter that Ms. Left Hand sent, saying that Mr. Crow Eagle did nothing wrong with respect to this and she did not want to testify against him, I think also shows a difference in their culpabilities here. With that, if the court does not have any further questions, I will yield the rest of my time. Thank you very much. Thank you. In regards to the primary caregiver exception, our distinction, Crow Eagle came home every day. He went to work, he came home, he was in the home with his son. The entire two month period they had the children, he wasn't working for a lot of it, so he would have been home during the other conduct in which they did not, when they left the children home alone unsupervised, or any other failings to nourish. On top of it, he could see his child, he interacted with his child. He could see the fact that the child was not eating. He could see the child needed to go to the hospital. Additionally, the court did make a finding as to when Crow Eagle knew. In taking the factual basis, your honor, the court asked Crow Eagle when he knew. He admitted that he knew the day of the burning. The court incorporated that into the factual basis for pleading guilty to count one, for the failure to take the child to the hospital. The dates, the facts in the indictment list the five days the child was at home. Crow Eagle's later recantations would be nothing but a failure to accept responsibility for that fact. Furthermore, your honor, looking at the characteristics of the defendant, the support letters and witnesses that came in support of Crow Eagle. The court dismissed what they had to say, noting that the intense child neglect and abuse that went on here did not credit much to what they had to say. This left hand had a much more substantial history of trauma and abuse. Penalty scheme the government noted about, the plain language of the statute doesn't focus on similar penalty schemes. Focuses on similar conduct. In Lazenby, what did the district court do? It noted the differences in guidelines and differences in statutory penalties. But it still went further. It looked to the conduct in the PSR, the unobjected conduct that Crow Eagle did not object to in his PSR that applied to him in his role as a parent too. These are two parents that engage in a pattern of neglect and abuse of the same victims, the same house, and the same time. So I see my time is up, your honor. On that note, I'd ask the court to reverse remand for resentencing. Thank you. Thank you, Mr. Costello. Your honors, I really don't have much else to say on remand, or on rebuttal, excuse me. But I've been thinking about your question on the procedural way that this could be done or is even allowed to be done. And I suppose the court could actually remand to the district court and say, well, we remand this to you for enforcement of the settlement agreement. I don't know if that's, I've never seen that before. But I know that appeals courts can remand for all kinds of reasons. And so that would be the only other solution that I can come up with. So, that's all I have. Well, if you come up with a mechanism, I suggest you send in a 28-J letter quickly. To? To the court. To you guys? Yes. Okay, 28-J, all right. Okay. Thank you, Mr. Meyer. All right, thank you. Counsel, we appreciate your appearance and arguments today. Case will be submitted and decided in due course. Ms. Zilge, would you call our final case for argument today? Last case for argument, 172391, 38th and 4th, Minnesota, United States, Montage House.